## Appeal of THE BARNES COAL & MINING CO. and THE COLUMBUS COAL & MINING CO.

Docket No. 3209. Submitted July 15, 1925. Decided February 19, 1926.

1. Upon evidence introduced, taxpayers *held* to be affiliated.
2. Evidence *held* insufficient to overcome Commissioner's determination with respect to the invested capital of the Columbus Coal & Mining Co.
3. Value of assets acquired by the Barnes Coal & Mining Co. in exchange for its stock, determined.

*Warner M. Pomerene* and *William R. Pomerene, Esqs.*, for the taxpayers.

*Lee I. Park, Esq.*, for the Commissioner.

Before GREEN and MORRIS.

The Commissioner has determined deficiencies in income and profits taxes for the calendar year 1918 in the sum of $50,392.58, of which amount there is in controversy in this appeal the sum of $9,885.33.

The petition asserts as the grounds of the appeal:

(1) That the Commissioner erred in holding that the Barnes Coal & Mining Co. and the Columbus Coal & Mining Co. were not, in the year 1918, affiliated corporations;

(2) That he erred in deducting from the invested capital of the Columbus Coal & Mining Co. the sum of $65,000;

(3) That he erred in refusing to allow the Barnes Coal & Mining Co. a paid-in surplus in the sum of $52,899.95;

(4) That he erred in deducting the sum of $5,000 from the invested capital of the Barnes Coal & Mining Co.; and,

(5) That he erred in reducing the depletion rate applicable to coal mined by the Barnes Coal & Mining Co.

No proof was offered as to the $5,000 item set out as the fourth ground of the appeal, and we conclude that it was either abandoned or is included in one of the other claims made by the petitioners.

The fifth assignment of error was abandoned at the hearing.

FINDINGS OF FACT.

The Columbus Coal & Mining Co., an Ohio corporation, was organized in 1884. The Barnes Coal & Mining Co., an Ohio corporation, was organized in 1906. Both companies have their principal place of business at Coshocton. The mines of the two companies are some 7 miles apart.

The stockholdings in the two companies during the years in question were as follows:

| | The Barnes Coal & Mining Co. | | The Columbus Coal & Mining Co. | | Combined percentage. |
|---|---|---|---|---|---|
| | Number of shares of stock of par value of $100. | Per cent. | Number of shares of stock of par value of $100. | Per cent. | |
| Francis N. Barnes | 25 | 25 | 40 | 40 | 32½ |
| O. F. Barnes | 25 | 25 | 20 | 20 | 22½ |
| Rollin N. Barnes | 25 | 25 | 20 | 20 | 22½ |
| A. F. Baier | 25 | 25 | 20 | 20 | 22½ |
| Total authorized and issued stock | 100 | 100 | 100 | 100 | 100 |

One share of stock in the Barnes Coal & Mining Co., listed above as the property of Rollin N. Barnes, was in fact issued to Marguerite E. Barnes, the wife of Rollin N. Barnes, and was issued to her to qualify her as a director of the company. One share of stock in the Columbus Coal & Mining Co., listed above as the property of Clyde F. Barnes, was in fact issued to Olive M. Barnes, and was issued to her to qualify her as a director of that company. In each case the share is actually the property of the husband.

The directors and officers of the two companies during the year 1918 were as follows:

| Officers | Directors of the Columbus Coal & Mining Co. | Directors of the Barnes Coal & Mining Co. |
|---|---|---|
| President | Francis N. Barnes | Rollin N. Barnes. |
| Vice president | Rollin N. Barnes | A. F. Baier. |
| Secretary-treasurer | Clyde F. Barnes | Clyde F. Barnes. |
| | A. F. Baier | Francis N. Barnes. |
| | Olive M. Barnes | Marguerite E. Barnes. |

Clyde F. Barnes is the father of Rollin N. and Francis N. Barnes. Olive M. Barnes is the wife of Clyde F. Barnes and Marguerite E. Barnes is the wife of Rollin N. Barnes.

Rollin N. Barnes was the general manager and superintendent of both companies. He was actively in charge of the mines of both companies and devoted his entire time to the operation thereof,

devoting to each mine so much of his time as the affairs of that mine required, having in mind the general success of both and without giving preference to either.

Both companies were operated from the same office. Clyde F. Barnes, secretary and treasurer of both companies, was in charge of the office work of both and did a large part of such work himself.

A. F. Baier was the sales manager of a company which handled the sales of coal from both mines. He took little part in the operation of the mines, but was always consulted in all matters relating to the sales of coal.

The coal from both mines was sold through the same sales agency. Orders were received sometimes in the name of one company and sometimes in the name of the other and were filled from the coal of whichever mine could most advantageously fill the order, with no attempt to favor either company. The mines of the two companies were operated practically as a unit. Machinery and labor were moved from one to the other as the occasion required. Each company loaned to the other, without interest or profit, money and credit and cooperated in the purchase of supplies and materials. Rollin N. Barnes, Francis N. Barnes, and C. F. Barnes, each, as the conditions required, loaned his personal credit to the companies. If the available funds of one company were not sufficient to pay officers' salaries, they were paid by the other company or by the individual stockholders.

Each of the stockholders voted his stock independently of the other stockholders. There was no control of any stockholder's stock by any other stockholder or by either of the companies.

The Columbus Co., at the time of its incorporation, had an authorized capital of $75,000. Stock of the par value of that amount was issued at the time of its organization for mining properties in Hocking, Perry, and Coshocton Counties, Ohio. All of the persons who had actual knowledge of the value of the assets acquired in exchange for the stock are dead.

In 1906 the office of the Columbus Co. was moved from Columbus to Coshocton, Ohio. At that time all of the books and records pertaining to the organization and operation of the company, with the exception of the corporate record book and the stock book, were destroyed, and there are available at this time no records, other than the two referred to, which are evidence of the value of the assets received by the corporation in exchange for its stock.

No dividends were paid by the Columbus Co. prior to 1904, nor were other distributions made to stockholders of the Columbus Co. prior to 1904. During this period, however, the company did sustain substantial losses, the exact amount of which was not disclosed by the evidence.

In the year 1902 the authorized capital stock of the company was reduced from $75,000 to $10,000 by appropriate amendments to the charter. This action was taken for the purpose of reducing the amount of the State franchise tax. So far as the record discloses the authorized capital stock was not increased thereafter.

In April, 1906, the Barnes Coal & Mining Co. was formed to take over from a partnership composed of F. N. Barnes, R. N. Barnes, C. F. Barnes, and several associates, certain mining properties, together with the equipment thereon, owned and operated by the partnership prior to that time. The principal acquisition was that of a certain mine acquired by R. N. Barnes for himself and the other members of the partnership by purchase from the Lorain Coal & Dock Co. during February, 1906. The assets acquired from the Lorain Coal & Dock Co. are listed and had a value as of the date of acquisition, as follows:

| | |
|---|---|
| 126 acres of surface | $2, 394. 00 |
| 186 acres of coal | 16, 293. 60 |
| Machinery, equipment, and supplies | 29, 050. 01 |
| Contract with the Wheeling & Lake Erie R. R. Co. for rebates of freight | 5, 000. 00 |
| Total | 52, 737.61 |

This property was purchased for $25,000, turned over to the Barnes Coal & Mining Co. for its entire issue of capital stock of the par value of $10,000, and was set up on the books of the company as having the value of $30,000.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

### OPINION.

GREEN: There are in this case three issues: (1) Are the petitioners affiliated? (2) Should the Columbus Coal & Mining Co. be allowed as invested capital an amount equal to the par value of the stock exchanged for assets? (3) Is the Barnes Coal & Mining Co. entitled to a paid-in surplus, and if so, the amount thereof?

The first issue depends upon whether the petitioners meet the requirements of paragraph (b) of section 240 of the Revenue Act of 1918. That paragraph reads as follows:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls

through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

It is clear that neither corporation owned or controlled any part of the stock of the other and that, if the corporations are to be deemed affiliated, it must be because " substantially all the stock is owned or controlled by the same interests."

An examination of the stockholdings discloses that four men, each of whom is a stockholder in both companies, own all of the stock In the Barnes Co. their holdings are equal. In the Columbus Co. one owns 40 per cent and the other three 20 per cent each.

We have no question of *control* and have remaining only the question of whether this ownership by four men is ownership " by the same interests." The inevitable conclusion from an examination of the evidence in this case is that substantially all the stock of the corporations was owned by the same interests. This being true, we hold that statutory requirements have been met and that the corporations should be deemed affiliated. See *Appeal of Rowe Transfer & Coal Co.*, 1 B. T. A. 593; *Appeal of Rishell Phonograph. Co.*, 2 B. T. A. 229; *Appeal of Watsontown Brick Co.*, 3 B. T. A. 85.

In support of the second contention, counsel argue convincingly that, under the common law and the statutes of Ohio in effect at the time the stock of the Columbus Coal & Mining Co. was exchanged for the mining properties, it was the duty of the directors on an exchange of stock for property to secure property of a par value equal to the par value of the stock exchanged, and that there is a presumption that the officers acted regularly and in accordance with the law. Thus they argue that proof of the issuance of stock of the par value of $75,000 raises the presumption that the assets received in exchange were worth $75,000. It is not necessary for us to determine whether, under the common law or the statutes of Ohio, such a presumption arises.

If we assume that the petitioners' contention is correct, the question then is whether the presumption is sufficient to sustain the burden of proof. Such a presumption is rebuttable and is far from conclusive. The weight to be given to presumptions must be determined from common experience, and common experience in transactions wherein corporate stock is exchanged for property leads us all to scrutinize closely such a transaction. Such a presumption, unsupported by actual evidence of the value of the property received, is insufficient to sustain the burden of proof, and as to this point in the case we must affirm the Commissioner. *Appeal of W. E. Marshall & Co.*, 1 B. T. A. 175; *Appeal of Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190.

A determination of the third issue necessitates a valuation of the assets received by the Barnes Coal & Mining Co. in exchange for its stock. There was no weakness in the evidence offered as to the value of the assets acquired, and we have found as facts the values which were proven, except that, while the evidence shows the existence and transfer to the petitioner of the claim against the railroad of $5,162.34 and its subsequent payment, there was no evidence of its actual value on the day of acquisition, and we are not convinced that such a claim was worth its full face value. The evidence does clearly indicate that it had a substantial value and we have fixed it at $5,000.